GEORGE MURGITROYDE *et al. v.* JAMES E. CLEARY.

ESTATE. *Assets of. When money. Chancery court. Jurisdiction of, to administer.* A court of chancery has jurisdiction, within two years of the grant of letters of administration, where the assets of the estate are in money, or in effects readily convertible into money, and upon satisfactory proof that there are no unpaid debts, to administer the estate, and distribute the assets among the next of kin, and, in a proper case, without requiring refunding bonds.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

W. M. RANDOLPH for complainants.

MORGAN & McFARLAND and TAYLOR & CARROLL for defendant.

COOPER, J., delivered the opinion of the court.

John Murgitroyde died intestate in Shelby county, Tennessee, on September 19, 1884, and the defendant, James E. Cleary, was, on October 3, 1884, appointed and qualified as the administrator of his estate. The

estate consisted of bonds, and money deposited in various savings banks in Pennsylvania and Massachusetts. The only debts brought against the estate have been the bills of the physicians who attended the intestate in his last illness, and the funeral expenses. This bill was filed July 14, 1885, by the brothers and sisters of the deceased, as his only heirs and distributees, who are resident citizens of Philadelphia, Pennsylvania, against the administrator, to have distribution of the estate at once, without waiting until the end of the two years allowed for the administration, upon the ground that there are no debts. The complainants also ask that they be not required to give refunding bonds for their distributive shares, because of their poverty, and their inability to give security in this State. The chancellor granted the relief sought, and the defendant appealed.

The intestate was born in England, in 1820, but came, with his parents, when about eight years of age, to Philadelphia, Pennsylvania, where he was, a few years afterward, apprenticed to the trade of a brass founder and lamp manufacturer, and subsequently carried on the trade of a gas-fitter and plumber. He removed to Memphis in 1850, and lived there until his death, being actively engaged up to the war in the gas-fitting business, but only doing occasional jobs in his trade afterward. He was a member of the volunteer fire department of Memphis before the war, and for a time, before and during the war, a member of the pay fire department. The defendant, Cleary, has been connected with the fire department since the

Murgitroyde *v.* Cleary.

war, and chief of that department since the organization of the Taxing District. The intestate kept his effects and slept for about eight years at an engine house of the fire department of which the defendant was captain. He then moved away for a time, but again took up his quarters in another engine house, where he lived for three years, and until he was taken with the illness from the effects of which he died in a hospital. The defendant had him removed to the hospital and took care of him in his last illness. Before his death, he turned over to the custody of the defendant United States four per cent. registered bonds to the nominal amount of $23,500, together with checks to the amount of $2,350 for interest due upon these bonds, which he had never collected. He also turned over to the defendant books of deposit showing deposits in the savings institutions of Pennsylvania and Massachusetts of about $29,000. After his appointment as administrator, the defendant, with the consent of the complainants, turned these deposit books over to administrators appointed in the respective States, by whom the money has been collected.

The defendant was examined as a witness, and testified in relation to the deceased as follows: "He was very close; never spent a cent for clothes or any thing else that he could avoid; dressed in the plainest manner; slept at the engine house for years, and ate at the cheapest boarding houses, paying for them by the meal. From my acquaintance with him, I don't think it cost him, for years before his death, exceeding from twelve to thirteen dollars a month to

live.   He would buy his clothes and shoes from houses
which sold goods that had been damaged by fire.
If I understand the meaning of the word "miser,"
I should say he was emphatically one, and I often
called him so to his face in his lifetime.   He for
years had a constant fear of dying in the poor house.
I never knew him to buy any thing on a credit.
I remember I would sometimes buy little things for
him, such as medicine, on credit, and he would have
me to go and pay for it as soon as possible.   I think
he always paid as he went."   The defendant also states
in his answer that, upon his qualification as admin-
istrator, he at once advertised for creditors to present
their claims, and that the only claims presented which
were created in the intestate's lifetime were the ac-
counts of the doctors for medical services during his
last illness.

These facts do show to a moral certainty, and al-
most demonstrate, that there are no debts against the
estate outstanding and unpaid.   There is proof, more-
over, tending to show that the complainants belong
to a class which make their living by daily labor,
that they have no friends in this State to go their
security on refunding bonds, and that they are unable to
give such bonds as our statute requires.   And the ques-
tion is, whether the court of chancery has the power to
relieve them from the requirements of the statute
under the circumstances, and compel the administrator
to distribute the assets within the time allowed for
the filing of claims against the estate?

"No executor or administrator," says the Code,

section 2311, "shall take, hold or retain in his hands more of the deceased's estate than amounts to his necessary charges and disbursements, and such debts as he shall legally pay within two years after administration granted; but all such estates so remaining shall, immediately after the expiration of two years, be divided and paid over to the person or persons to whom the same may be due by law or by the will of the deceased." By section 2312: "Any distributee or legatee of the estate may, after the expiration of two years from the grant of letters, apply to the county, circuit or chancery court of the county or district in which administration was taken out, to compel the payment of the distributive share or legacy." These sections, it will be noticed, do expressly provide for the distribution of estates before the time allowed by law to creditors for filing their claims, which is two years and six months for creditors residing in the State, or three years and six months for non-resident creditors. The Code, section 2315, points out the mode of proving heirship. The next section, 2316, is: "But every legatee and distributee, before receiving his portion of the deceased's estate, or some other for him, shall give bond with two or more able sureties, in a penalty double the amount of his share, payable to the State, conditioned that if any debt or debts truly owing by the deceased shall be afterward sued for and recovered, or otherwise duly made to appear, said legatee or distributee shall refund and pay his ratable part of such debt or debts out of the part or share so allotted to him." Sec-

Murgitroyde *v.* Cleary.

tion 2317 requires the executor or administrator to bring the refunding bond into court at the next term after its date, to be spread on the minutes, and filed with the clerk. Section 2318 is: "Where an executor or administrator has pleaded fully administered, no assets, or not sufficient assets to satisfy the plaintiff's demand, and such plea has been found in favor of the defendant, and judgment has been recovered against him to be levied of the assets of the deceased, the creditor, on his motion, may have a *scire facias* against the obligors in such bond to show cause why execution should not be issued against them for the amount of the judgment." Section 2319, is: "And if there shall be judgment against the defendants to the *scire facias*, or any of them, execution may issue thereon against the proper goods and chattels, lands and tenements of such defendant or defendants."

The refunding bond thus required, it has been held, inures to the benefit of creditors, and can not be sued upon at law by the personal representative: *Robinson* v. *The Chairman*, 8 Hum., 374; *Pea* v. *Waggoner*, 5 Hayw., 1, 23. It is intended for the protection of creditors who may come forward after the time for distribution, and should be taken if it shall be necessary for the payment of debts: *Reid* v. *Huff*, 9 Hum., 345, 361. An administrator, it has also been said, is neither required nor allowed to pay distributees until the time allowed by law for creditors to sue shall have elapsed, unless the distributee, ascertaining or approximating the value of his shares, shall tender a refunding bond with good security, and de-

mand payment: *Morris* v. *Morris*, 9 Heis., 814, 821. And such tender, it seems, will be necessary after the lapse of two years to put the administrator in default: *Willeford* v. *Watson*, 12 Heis., 476.

The result of the statutory provisions and the decisions thereon is, that the personal representative out of court can not be required to pay over a distributive share without a refunding bond, but the court, having the necessary jurisdiction, may compel him to distribute, even within the time allowed for creditors to file their claims, in which case the court shall take refunding bonds, if, to use Judge Turley's language cited above, in *Reid* v. *Huff*, "it shall be necessary for the payment of debts." The personal representative judges of the necessity of taking a refunding bond if the court does not intervene. But if the legatee or distributee proceeds under section 2312, or if the personal representative, after final settlement in the county court, pays or is compelled to pay into court the funds in his hands, it is obviously for the court to judge of the necessity of a refunding bond. The personal representative could not resist the orders or decrees of the court for the money upon the ground that a refunding bond had not been given. The decree of the court is sufficient, so far as he is concerned, to sustain a plea of fully administered.

If this be true, the principal difficulty in the way of the relief sought in the case before us is removed. For it may be conceded at once that the court could do nothing which would expose the administrator and his sureties to danger of loss, or deprive them of any

35—VOL. 16.

of the safe-guards given by statute. And the real question in the case is, whether the personal representative is sufficiently protected from the claims of creditors, by a decree of the chancery court, at the suit of the legatees or distributees, ordering him to pay the money into court?

The statute authorizes the courts named, upon the application of a legatee or distributee, to compel the personal representative to pay the money or assets of the estate into court before the time has expired which is allowed by law for the filing of the claims of creditors. The order or decree rendered in such a case would be binding upon the personal representative, whether a refunding bond was required by the court or not, and would equally sustain a plea of fully administered to a subsequent suit by a creditor. The taking of the bond rests in the discretion of the court, and not in the will of the personal representative, and as a matter of fact is rarely ever required. The power of the personal representative to demand a refunding bond ceases when the jurisdiction of the court attaches.

The statute, it is true, gives jurisdiction to the county, circuit or chancery court "after the expiration of two years from the grant of letters." The provision as to the time, this court has said, is merely directory: *Willeford* v. *Watson,* 12 Heis., 476. But if it were otherwise, the statute does not deprive the court of chancery of its inherent jurisdiction over the administration of estates, which is reserved to the court by the Code, section 4279. That court, at the in-

Murgitroyde *v.* Cleary.

stance of any of the parties interested, may take cognizance of matters of administration at any time. The delay of two years is given to enable the personal representative to realize assets, and for the benefit of creditors, and is a reasonable period, as a general rule, for these purposes. If, however, the assets of the estate are all in money or effects readily convertible into money, and there are no debts, as would be the case where the intestate was an infant of tender years in the custody of its parents, no necessity would exist for the delay of two years, or the requirement of refunding bonds. The parties entitled would have a right to demand distribution at once, and the court of chancery would have jurisdiction to order it.

In this view, the question before us, the administrator admitting that the assets of the estate are realized or at once realizable, is one of fact; does the proof satisfactorily establish that there are no debts? In the case of an infant intestate of tender years, suggested above, there would be absolute certainty of the absence of debts. In the case before us, there is a moral certainty of the same fact. And moral certainty, not absolute certainty, is all that can be required in the administration of justice. The administrator will be protected from liability to creditors by the decree of the court, and there are, in all human probability, no creditors of the estate.

The chancellor's decree will be affirmed with costs, the administrator to be allowed the costs out of the assets of the estate.